UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| DOMINIQUE BRISKER, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:21-CV-882 RLM-MGG |
| | ) | |
| WILLIAM HYATTE and | ) | |
| GEORGE PAYNE, JR., | ) | |
| | ) | |
| *Defendants* | ) | |

OPINION AND ORDER

Dominique Brisker has sued Warden William Hyatte and Deputy Warden George Payne, Jr., in their individual capacities, alleging that they subjected him to unconstitutional conditions of confinement while he was imprisoned at Miami Correctional Facility. Mr. Brisker sued from prison, so the Prison Litigation Reform Act's requirement that he exhaust all administrative remedies before suing over prison conditions applies. *See* 42 U.S.C. § 1997e(a). The defendants have moved for summary judgment, and Mr. Brisker has cross-moved for summary judgment, on the issue of exhaustion of administrative remedies. Mr. Brisker requests oral argument to present legal arguments but not additional evidence. Neither party requested a Pavey hearing. *See* Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008).

For reasons explained in this opinion and order, the court DENIES the defendants' motion for summary judgment [Doc. 10], GRANTS Mr. Brisker's

motion for summary judgment, [Doc. 24], and DENIES AS MOOT Mr. Brisker's request for oral argument. [Doc. 38].[1]

LEGAL STANDARD

A party is entitled to summary judgment when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On cross-motions for summary judgment, a court "constru[es] all facts and draw[s] all reasonable inferences in favor of the party against whom the motion under consideration was filed." Hess v. Bd. of Trs. of S. Ill. Univ., 839 F.3d 668, 673 (7th Cir. 2016) (citation omitted). A party can't merely allege a disputed material fact to defeat summary judgment; "instead the nonmovant must present definite, competent evidence in rebuttal," Parent v. Home Depot U.S.A., Inc., 694 F.3d 919, 922 (7th Cir. 2012), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007); *see also* Fed. R. Civ. P. 56(e)(2).

A defendant isn't entitled to a jury trial on contested issues involving exhaustion. Wagoner v. Lemmon, 778 F.3d 586, 590 (7th Cir. 2015) (discussing Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008)). A court holds a Pavey hearing to resolve issues of fact bearing on exhaustion, but "[w]hen there are no disputed

---

[1] Mr. Brisker's action was consolidated for pretrial, non-dispositive matters with several other cases with similar allegations against the same defendants, [Doc. 6], and he requests consolidated oral argument. [Doc. 38]. The exhaustion defense is a dispositive matter, so the court resolves the issue in separate orders.

facts regarding exhaustion, only a legal question, the court may resolve the issue without a hearing. Vela v. Ind. Dep't of Corr., No. 3:16 CV 51, 2017 U.S. Dist. LEXIS 9279, at *2 (N.D. Ind. Jan. 24, 2017).

BACKGROUND

Dominique Brisker alleges that Warden Hyatte and Deputy Warden Payne violated his constitutional rights when they kept him in a restrictive housing unit cell at Miami Correctional Facility for more than thirty days starting in August 2020. He alleges he was placed in a cell with no working light and with a broken window, exposing him to the elements. Three days after Mr. Brisker arrived, the window was covered with sheet metal, darkening the cell and making it extremely hot. Mr. Brisker claims this treatment violated his Eighth Amendment right to be free from cruel and unusual punishment and he seeks to hold Warden Hyatte and Deputy Warden Payne accountable by way of 42 U.S.C. § 1983.

Mr. Brisker sued from prison, so the defendants aren't liable if they can show that Mr. Brisker didn't exhaust administrative remedies available to him. *See* 42 U.S.C. § 1997e(a).

*Miami Correctional Facility's Administrative Remedies*

Miami Correctional Facility receives and manages prison grievances according to the Indiana Department of Correction's Offender Grievance Process, Policy and Administrative Procedure 00-02-301, effective since September 1, 2020. In broad strokes, the policy requires that a prisoner complete a formal

3

grievance and two appeals to exhaust a claim. The parties agree that the written policy is as follows.

A prisoner can complain about prison conditions by filing a grievance with the prison. The prison considers only certain issues appropriate for the grievance process, like staff treatment, medical or mental health, acts of reprisal, and other concerns about conditions of care and supervision in prison. A prisoner starts by completing a grievance on State Form 45471, to be completed no later than ten business days from the date of the incident giving rise to the complaint. An offender grievance specialist is to review any grievance within five business days of receiving the grievance. A specialist either rejects the grievance or accepts and records it. A grievance specialist can reject a grievance if it is untimely, relates to more than one event or issue, is illegible, and the like. A rejected grievance is returned to the prisoner with State Form 45475, "Return of Grievance." It is not appealable, but a prisoner can submit a revised State Form 45475 within five business days of when the grievance is returned.

If a grievance specialist accepts the grievance, the grievance is logged into the prison's system with any other grievances filed by that same prisoner. The grievance is marked on the prisoner's log with "I – Formal Grievance." The grievance specialist has fifteen business days to investigate and give a response.

A prisoner who is dissatisfied with the prison's response can appeal the response with State Form 45473. Any appeal is due within five business days of the date of the grievance response. A prisoner can also appeal a grievance if there's no response within twenty business days of when the grievance specialist

4

received the response. An offender grievance specialist is to log the date of receipt of the appeal and forward the appeal to the warden. The warden or his designee is to review the appeal within ten business days of receiving the appeal, and the offender grievance specialist is to give a copy of the appeal response to the prisoner.

A prisoner dissatisfied with the warden's decision can lodge an appeal with the Indiana Department of Correction. The prisoner must check the "disagree" box on the warden or his designee's response and submit the response with the completed State Form 45473 and any supporting documentation. This appeal must be made to the offender grievance specialist within five business days of the warden or his designee's appeal response. A prisoner can also appeal if there's no response within ten business days of when the warden received the first-level appeal. The offender grievance specialist is to document the appeal in the grievance database, logging the prisoner's grievance history with "II – Formal Appeal." An appeal of the warden's decision is reviewed by the Department Offender Grievance Manager and is considered final.

The parties disagree over how this policy was implemented and how Mr. Brisker used the grievance process.

*Warden Hyatte and Deputy Warden Payne's Account*

Warden Hyatte and Deputy Warden Payne assert that Mr. Brisker didn't exhaust the grievance process. Their evidence includes the Indiana Department of Correction's Offender Grievance Process, Policy and Administrative Procedure

5

00-02-301, [Doc. 10-2], Mr. Brisker's grievance history, including a grievance and return of grievance form, [Doc. 10-3], and a declaration of Michael Gapski, a grievance specialist at Miami Correctional Facility, [Doc. 10-1]. They include in response to Mr. Brisker's motion for summary judgment another plaintiff complaint and grievance records. [Doc. 29-1 and 29-2].

Mr. Gapski reviewed documents relating to Mr. Brisker's grievance history and attests to the grievance policy just described. He then attests to Mr. Brisker's documented grievance history, explaining that prison records include a grievance received August 24, 2020. Mr. Brisker complains in the grievance, [Doc. 10-3 at 3], about being in segregation, not getting an hour of recreation time, not getting hot meals, being moved to cell A-409 where the window was broken then covered, darkness in the cell, and the like. The grievance was rejected for having multiple issues and for not specifying a type of relief. The return of grievance form said Mr. Brisker could correct and submit the grievance again within five business days. The grievance log shows that Mr. Brisker had no grievances or appeals accepted.

*Mr. Brisker's Account*

Mr. Brisker asserts that he exhausted all administrative remedies available to him. His evidence includes his own declaration, [Doc. 22-7 at 8–9], the deposition transcript of Michael Gapski, the already-mentioned grievance specialist who also served as Rule 30(b)(6) representative for the prison, [Doc. 22-1], the deposition transcript of Charlene A. Burkett, the Director of the

Indiana Department of Correction Ombudsman Bureau, [Doc. 22-2 to 22-5], and the deposition transcript of Stacy Hall, a correctional officer and law librarian at Miami Correctional Facility, [Doc. 22-6].

According to Mr. Brisker's declaration, Mr. Brisker filed a grievance about his cell conditions. He acknowledges that the defendants include the return of grievance form marked received August 20, 2020, and marked returned August 26, 2020. Mr. Brisker said that he never received the return of grievance form. If he had, he would have responded to it. When he received no response, he complained to a counselor on the unit, Mr. Hamrick. Mr. Hamrick told Mr. Brisker that he had to wait for a response before he could proceed further.

Mr. Brisker presents Mr. Gapski's testimony as evidence that Miami Correctional Facility didn't follow department policy and made the grievance process impossible. Mr. Gapski, testifying as Miami Correctional Facility's Rule 30(b)(6) representative, described how grievance specialists at Miami Correctional Facility handled the grievance process. He explained that in restrictive housing, like Mr. Brisker's unit, a prisoner wishing to file a grievance would complete a grievance form, hand it to a correctional officer, and the correctional officer would put the grievance in prison intraoffice mail to be delivered to the grievance specialists. No grievance is logged until a grievance specialist receives the grievance, and grievance specialists have no way of knowing whether or when a correctional officer accepted a prisoner's grievance, which correctional officer accepted a grievance, or what happened to a grievance that was sent but never received.

Mr. Gapski also described how Miami Correctional Facility handles appeals. The Indiana Department of Correction policy says a prisoner can appeal the prison's response to a grievance. A prisoner can appeal the prison's response or "may appeal as though the grievance had been denied" if there's no response within twenty business days of the offender grievance specialist's receipt of the grievance. [Doc. 10-2 at 12]. The policy adds that a prisoner who wishes to file a first-level appeal must complete State Form 45473 and submit it within five business days of the date of the grievance response.

Mr. Gapski explained things differently, describing an extra unofficial step at Miami Correctional Facility. He said that the prison responds to grievances with an Offender Grievance Response Report. That report explains the prison's response and has a spot to mark "agree" or "disagree." It isn't State Form 45473, which the written policy requires for starting an appeal. If a prisoner wants State Form 45473, he marks "disagree" on the Offender Grievance Response Report and sends it to the grievance specialists. When a grievance specialist receives the report marked "disagree," the specialist sends a copy of State Form 45473 to the prisoner. That copy comes from a grievance specialist and must include the original grievance number on it. [Doc. 22-1 at 46–47]. The grievance specialists forward an appeal to the warden and send a receipt to the prisoner only once the specialists have received a completed State Form 45473.

Mr. Gapski also spoke of how timing is calculated. The grievance policy requires that a prisoner "submit a completed State Form 45471, 'Offender Grievance,' no later than ten (10) business days from the date of the incident

8

given rise to the complaint." [Doc. 10-2 at 9]. The same is true for appeals, except that a prisoner has five business days instead of ten. [Doc. 10-2 at 14]. Mr. Gapski attested that grievance specialists calculate timing based on when they receive an appeal. So an appeal is deemed untimely if not *received* within five business days. Timing doesn't depend on when a prisoner signed an appeal or handed an appeal to a correctional officer, even though prisoners often can't give an appeal directly to a grievance specialist.

Mr. Brisker presents deposition testimony of Charlene Burkett, the Director of the Department of Correction Ombudsman Bureau. The Ombudsman Bureau handles prison complaints independently of the Department of Correction and Indiana Department of Administration but doesn't have enforcement power. The Ombudsman Bureau received several complaints from plaintiffs in the consolidated cases, each claiming that Miami Correctional Facility didn't respond to their grievances.

Likewise, Officer Stacy Hall, who was a law librarian in May or June 2021, attested that thirty to forty prisoners complained to her that their grievances didn't receive responses.

## DISCUSSION

Mr. Brisker and the defendants move for summary judgment on the exhaustion defense. The governing law is thoroughly set out in the court's opinion and order on cross-motions for summary in <u>Rollins v. Hyatte</u>, 3:21-CV-

9

767-RLM-MGG, slip op. at 11–12, which discussion the court adopts by reference.

Warden Hyatte and Deputy Warden Payne's legal argument is straightforward: the prison's policies plainly require a formal grievance and two levels of appeal. Mr. Brisker didn't successfully file any grievance or appeal about his cell's conditions, so he didn't exhaust administrative remedies.

Mr. Brisker's argument is similarly straightforward: the prison didn't give him a response to his grievance and the appeals process was impossible for non-responses, so he fully exhausted administrative remedies.

Approaching from Mr. Brisker's perspective makes for a clearer picture.

Mr. Brisker claims he timely submitted a grievance about his cell conditions and didn't receive a response. According to Mr. Brisker, prison officials' failure to respond made the process unavailable. *See* Ross v. Blake, 578 U.S. 632, 643 (2016) ("[A]n administrative procedure is unavailable when (despite what regulations and guidance materials may promise) it operates as a simple dead end — with officers unable or unwilling to provide any relief to aggrieved inmates.").

Mr. Brisker's account appears to hit a snag with the grievance policy. A prisoner must follow any prison rules that require administrative appeals, id. (citing Pozo v. McCaughtry, 286 F.3d 1022, 1025 (2002)), and Miami Correctional Facility's policy required notifying grievance specialists of non-responses and also required that prisoners appeal non-responses.

10

According to policy, a grievance specialist is to send the prisoner an "unacceptable form" rejecting a grievance or a notice of receipt of an accepted grievance within ten business days of receipt of the grievance. If the prisoner doesn't receive either within ten business days of submitting the grievance, the prisoner is to notify the grievance specialist of the non-response and retain a copy of the prisoner's own notice to the grievance specialist. The grievance specialist is to respond to that notice within ten business days. The policy separately requires that a grievance specialist respond to a grievance within fifteen business days of receipt. If a prisoner didn't receive a response within twenty business days of when the grievance specialists received a grievance, a prisoner was to appeal as if a response had come. The warden was to respond to an appeal within ten business days of receiving the appeal. If he didn't respond by then, a prisoner could appeal as if a response had come. Under these rules, Mr. Brisker would exhaust administrative remedies only if he appealed the lack of a response to a grievance and appealed the first-level appeal response or lack of response.

This appeals process makes little sense. The part of the policy requiring that a prisoner file a notice of non-response says that the prisoner must do so if ten business days have passed since submitting a grievance. It doesn't give a deadline by which the prisoner must notify the grievance specialist, suggesting that the step isn't mandatory. Nor does the policy define when a grievance is "submitted." Most deadlines in the grievance policy are based on when a prison official receives a grievance or appeal. It's unclear if a grievance is submitted

when the grievance is received, which the prisoner would have no way of knowing, or when the prisoner signed the grievance, hands it to a prison official, or puts it in an outbox, which the policy doesn't address. The policy doesn't say how to provide this notice and the prison doesn't have a form for this purpose; Mr. Gapski testified that there's not a standard form and prisoners can "write on anything." [Doc. 22-1 at 33].

This step's necessity is further obscured by its relation to the first-level appeal. First, the policy at one point says a prisoner "shall" notify the grievance specialist of a non-response [Doc. 10-2 at 9] while saying at another point that the only recognized process includes: (1) a formal attempt to resolve concerns; (2) a written appeal to the warden; and (3) a written appeal to the department grievance manager. [Doc. 10-2 at 3]. Second, the policy says a prisoner can appeal a non-response as if there'd been a response if twenty business days have passed from the grievance specialist's receipt of the grievance. The policy doesn't say that the prisoner can appeal only once he's filed a notice of non-response or once a grievance specialist has responded to a notice of non-response. This part of the policy is opaque and incapable of use for non-responses.

Appealing non-responses is likewise confusing. The prisoner can notify the grievance specialist of a non-response after ten days of submitting it, but a prisoner can file an appeal only by filing State Form 45473. Mr. Gapski describes an unauthorized step requiring a prisoner to first mark another form with "disagree" before receiving State Form 45473. But a prisoner can't mark "disagree" on a form he never receives. This is a dead end.

12

The defendants insist that Miami Correctional Facility recognizes only the official policy, contrary to what Mr. Gapski says. But even if the prison follows the written policy to a tee, appeals are unavailable for non-responses. The policy tells prisoners to appeal as if the grievance had been denied but doesn't say how a prisoner is to get a copy of State Form 45473,[2] much less how a prisoner in restrictive housing, like Mr. Brisker was, is to get hold of State Form 45473.

The same deficiencies apply to the second-level appeal. Policy dictates that a prisoner starts a second-level appeal by marking the warden's first-level response with "disagree." The defendants and the policy don't explain how a prisoner who receives no response to the first-level appeal can mark "disagree" on a form that they don't have and that might not even exist.

If Mr. Brisker is believed, he has exhausted *available* remedies. Mr. Brisker could have notified the grievance specialist of the non-response, but the policy lacks detail of how or when to do this and doesn't say that this is a prerequisite to the mandatory appeal of a non-response. Mr. Brisker could appeal the prison's lack of response after the prison's time to respond lapsed, but that appeal was made impossible because Miami Correctional Facility required State Form 45473 to appeal. It provided State Form 45473 form only after a prisoner completed the unauthorized intermediate step involving the Offender Grievance Response

---

[2] Mr. Brisker argues that the only way a prisoner gets State Form 45473 is to receive one from a grievance specialist after completing the unofficial and unauthorized step. The defendants object to this assertion as not supported by Mr. Gapski's testimony — he said that State Form 45473 comes from him but didn't exactly say that there was no other way to get the form. [Doc. 22-1 at 47]. Still, the defendants never explain how a prisoner who doesn't receive a response can get State Form 45473, nor does the written policy address this crucial step.

Report. If the defendants are right and they followed the policy word for word, they still don't explain gaps in the policy that don't account for non-responses. Nothing in the written grievance policy tells a prisoner how to appeal if he never receives a response or State Form 45473. Ultimately, the policy's rules about appeals are "based on the assumption that the prisoner has received a response to his original grievance," and doesn't account for non-responses. Knighten v. Mitcheff, No. 1:09-cv-333, 2011 U.S. Dist. LEXIS 2910, at *8–9 (S.D. Ind. Jan. 10, 2011). This policy gap means "there is no adequate appeals process," so Mr. Brisker "cannot be faulted for failing to appeal." Id. (citing Dole v. Chandler, 438 F.3d 804, 809–810 (7th Cir. 2006)).[3]

Mr. Brisker is entitled to summary judgment on the affirmative defense unless the defendants can somehow prove they're nevertheless entitled to judgment or can show that there's a genuine dispute of material fact requiring a Pavey hearing. *See* Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008).

Warden Hyatte and Deputy Warden Payne argue that administrative remedies were available and Mr. Brisker didn't exhaust them, so they're entitled to summary judgment.

---

[3] Another gap in the policy involves timing. Mr. Brisker had to appeal a non-response within twenty business days of when grievances specialists received a grievance or ten business days of when the warden received an appeal. Timing didn't depend on when Mr. Brisker signed or sent a grievance or appeal, and he had no way of knowing when someone else received his grievance or appeal. A prisoner who doesn't receive a response is apparently left to speculate about when an appeal of a non-response is due.

The defendants raise a hearsay objection to Mr. Hamrick's statement. Mr. Brisker says Mr. Hamrick said Mr. Brisker had to wait for a response before he could do anything else about his grievance. The defendants argue this is hearsay, so must be excluded and can't support a summary-judgment motion or response. Fed. R. Evid. 802; Carlisle v. Deere & Co., 576 F.3d 649, 655 (7th Cir. 2009). They also object to "hearsay statements made throughout Plaintiff's Statement of Material Facts," [Doc. 32 at 7], without identifying statements or explaining why any statement is hearsay.

A statement is hearsay if the declarant makes the statement out of court and the statement is offered for the truth of the matter asserted. Fed. R. Evid. 801. As Mr. Brisker explains, Mr. Hamrick's statement is offered for its effect on Mr. Brisker (misleading him into not trying to appeal or notify the grievance specialist about the non-response) rather than its truth (that Mr. Brisker had to wait). The statement isn't offered for the truth of the matter asserted, so the objection is overruled. Any other hearsay objection isn't developed, so is overruled. *See* McCormick v. Goebel, No. 3:19-CV-608, 2023 U.S. Dist. LEXIS 21903, at *14 (N.D. Ind. Feb. 7, 2023) ("Failure to articulate why a statement is hearsay is sufficient to waive the objection.") (citation omitted).

The defendants argue that Mr. Brisker didn't exhaust administrative remedies because he didn't notify the grievance specialists of the non-response or appeal the non-response as if it were a response. As to notifying the grievance specialist of a non-response, they say that Mr. Brisker has no admissible evidence that he tried to notify the grievance specialist, "[d]isregarding the

15

hearsay statement about what other staff allegedly told him regarding having to wait for a response." [Doc. No. 32 at 8]. The hearsay objection to Mr. Hamrick's statement is overruled, so Mr. Hamrick's statement counts as evidence that Mr. Brisker was prevented from complying with the requirement. Aside from that evidence, notifying the grievance specialist of a non-response wasn't clearly mandatory and the policy provisions were opaque, for reasons explained earlier, so that step was unavailable to Mr. Brisker.[4] The same is true of the appeals process; for other reasons explained earlier, appealing a non-response was a dead end for a non-response, as Mr. Brisker claims was the case, so that step was unavailable.

Relatedly, the defendants say that Mr. Brisker was moved out of his restrictive housing cell on August 26, the date of his grievance response, so "it is reasonable to infer that by the time the Return of Grievance form was sent out, Plaintiff decided to no longer pursue the issue in A-Cell House he was grievance." [Doc. 32 at 9]. Concluding that Mr. Brisker abandoned his grievance is speculation. Furthermore, the evidence that Mr. Brisker was moved out of his cell that same day that the return of grievance form was completed might cut against the defendants; the form might have arrived at Mr. Brisker's cell shortly after he was moved out and the form might have not been forwarded. The

---

[4] The defendants cite a case from this district in which a plaintiff was found not to have exhausted administrative remedies because he didn't comply with this step. Eslick v. Davis, No. 3:21-CV-866, 2022 U.S. Dist. LEXIS 211460, at *3–5 (N.D. Ind. Nov. 21, 2022). The parties in that case appear not to have argued that the requirement was too opaque and appear not to have had evidence that the plaintiff was misled about the process.

16

defendants don't explain what assurances, if any, are made that grievances responses and rejections are delivered to prisoners, and they don't have any testimony from the grievance specialist who completed the form or any other staff who handled the form, so the form's fate is left unknown. At any rate, evidence of Mr. Brisker's transfer, doesn't controvert Mr. Brisker's claim that he didn't receive the form.

The defendants also argue that Mr. Brisker's grievance was properly rejected because it involved multiple issues and didn't specify a form of relief. Whether the grievance's rejection was proper doesn't show that Mr. Brisker had remedies available in light of his evidence that he never received the rejection. If he didn't receive the rejection, as he claims, then the prison made it impossible for him to resubmit or appeal the rejection.

Next, the defendants argue the administrative process was available because Jeremy Blanchard, a plaintiff in a consolidated case, Blanchard v. Hyatte, 3:21-CV-160, completed all three steps. That the prison logged and responded to Mr. Blanchard's grievances doesn't contradict Mr. Brisker's claims. Mr. Brisker claims that *his* grievance went unanswered, not that no grievance ever received a response. He includes evidence of systemic failures to bolster his claim, but his claim rests on his declaration. Mr. Blanchard received responses, so he, unlike Mr. Brisker, didn't face the impossible task of appealing a non-response when an appeal requires a form that only comes with a response.

The defendants assert that administrative remedies were available because Mr. Brisker received information about the process during admission

17

and orientation and he has no evidence that he was never told how the process worked. This argument doesn't respond to Mr. Brisker's evidence and argument. His argument depends on whether he was given responses and could appeal those responses in practice, so whether he was informed of what the policy said on paper doesn't contradict his claims. Mr. Brisker's complete knowledge of the written policy wouldn't make up for Mr. Hamrick's statement and the impossibility of appealing a non-response.

At bottom, Warden Hyatte and Deputy Warden Payne's argument is that they're entitled to summary judgment because Mr. Brisker didn't correct his rejected grievance, but they raise no evidence to controvert his claim that he didn't receive the return of grievance. They have the completed return of grievance form but don't present any evidence that it was sent to Mr. Brisker or delivered to him. Meanwhile, Mr. Gapski's testimony reveals gaps in the process that allow grievances and responses to go untracked. This fits with the lack of evidence of what a grievance counselor does to ensure forms are delivered or specific evidence of what a grievance counselor or other staff did to deliver Mr. Brisker's form. Absent that evidence, the defendants don't controvert Mr. Brisker's claim that he never received the form. Without a response, Mr. Brisker was foreclosed from resubmitting the form or appealing, so administrative remedies weren't available. What evidence the defendants present is consistent with Mr. Brisker's claims, so doesn't create a genuine issue as to whether administrative remedies were available. Administrative remedies weren't available to Mr. Brisker, so he satisfied 42 U.S.C. § 1997e(a) before suing.

18

A court normally holds a Pavey hearing to resolve factual disputes bearing on administrative exhaustion, but needn't hold a hearing if it can resolve the issue of exhaustion on the documentary evidence. Bessler v. Wexford of Ind. LLC, No. 3:21-CV-691, 2022 U.S. Dist. LEXIS 199409, at *7–8 (N.D. Ind. Nov. 2, 2022). Neither party requested a Pavey hearing and the consistency between Mr. Brisker's claim of exhaustion and the defendants' evidence means there's no genuine issue of material fact. Accordingly, the court denies the defendants' motion for summary judgment and grants Mr. Brisker's motion for summary judgment without a Pavey hearing.

Mr. Brisker requested oral argument to help the court narrow its focus on the voluminous records and briefs across the consolidated cases. Oral argument is unnecessary, so the court denies the request for oral argument.

## Conclusion

For these reasons, the court DENIES the defendants' motion for summary judgment; GRANTS Mr. Brisker's motion for summary judgment; REJECTS the exhaustion defense; and DENIES AS MOOT Mr. Brisker's motion for consolidated oral argument.

SO ORDERED.

ENTERED:   August 15, 2023

/s/ Robert L. Miller, Jr.
Judge, United States District Court